CHRISTIAN H. BUHL ET AL. v. ORIN F. PECK ET AL.

*Fraudulent conveyances—Husband and wife—Evidence—Accounting.*

1. In a suit by judgment creditors to reach land alleged to have been fraudulently conveyed to the debtor's wife, the *fact* that the wife has never had any written memorandum with her husband showing the condition of *their* financial relations, or the state of the account between them, or any settlement by which others might know the amount of *his* indebtedness to *her*, is not, of itself, ground for disregarding their testimony that at the time of such sale the husband had of her money (and its accumulations), furnished to him to use in his business, more than sufficient to pay for the property, in the purchase of which he acted as her agent, as also in using her property in payment for the same.

2. Such a mode of dealing is not unlike that common where the proper feeling and mutual confidence exist between husband and wife, and in such cases no *equitable* rights will be recognized in any creditor, superior to those of the wife, to *have* her property lent to her husband, while living in such confidential relations, *when* she calls for it, or security therefor *when* she demands it; and no reason is known why the acts performed for the wife by her best and most confidential friend should be looked upon with suspicion while he is doing her business relating to her *sole* property.

Appeal from Clinton. (Newton, J., presiding.) Argued January 31 and February 1, 1888. Decided April 27, 1888.

Judgment creditor's bill. Decree dismissing bill affirmed. The facts are stated in the opinion.

*O. L. Spaulding,* for complainants.

*Auten & Moss,* for defendants.

SHERWOOD, C. J. On October 4, 1886, the complainants recovered a judgment in the Clinton county circuit court against the defendant Orin F. Peck for $1,002.10 damages, and $19 costs.

An execution having been returned unsatisfied, the bill in this case was filed in February, 1887, to subject certain lands, the title to which Mrs. Peck claimed, and which stood in her name, to the payment of the plaintiffs' judgment; they claiming that the consideration for the conveyances of the lands to Mrs. Peck moved from her husband, and that they were in fraud of their rights, and that she has other property of her husband that ought to go to the payment of the judgment. The bill is full in its averments, and in the usual form in such cases, stating all, however, after averring the return of execution and the debt still owing, upon information and belief.

The defendants filed their joint and several answer, in which they admit the judgment, the issuing and return of execution, and that the judgment is still unpaid. They admit the conveyance of the land in question to Mrs. Peck, and deny all fraud and evil intent with which they or either of them are charged, and deny every other material averment made in the bill.

The defendant Orin Peck avers that, at the time the lands in question were conveyed to his wife, he was doing a large mercantile business in Maple Rapids, and continued the same until 1884; that he was perfectly solvent when such conveyance was made; and that his property has always been in his own name.

Mrs. Peck, further answering, says that she has no lands, money, property, or effects in her name or possession, the consideration for which moved from her husband, or belonging to him, and that she has not been a party to any conveyances or transactions for the purpose of defrauding the creditors of her husband, or any other person.

Proofs were taken, and the cause heard upon them and the pleadings, before Judge Newton, who rendered a decree dismissing the complainants' bill, with costs.

A review of the record and briefs of the learned counsel

satisfies us that the decree of the circuit judge is right, and should be affirmed.

On March 12, 1878, Mrs. Peck purchased, according to the record of the conveyance, of Elijah Fleshman the E. ½ of the S. E. ¼ of section 5, in township 8 N., of range 3 W.; and, on April 10, 1878, she purchased of Henry L. Porter the E. ½ of the S. W. ¼ of section 4, in the same town and range, all situate in Clinton county. The consideration for the first parcel was $4,500, and for the second $3,500. It is these parcels of land claimed by Mrs. Peck, and to which she holds the legal title, the complainants seek by their suit to subject to the payment of her husband's debt represented in the judgment referred to.

At the time these purchases were made, Mrs. Peck claims that her husband had of her money and its accumulations, which she had let him have to use in his business, much more than sufficient to pay for the property purchased, and that he acted as her agent in making the purchases for her, and in using her property in payment for the same; and in this she is corroborated by the testimony of Mr. Peck, who, with his wife, testifies that her funds in his hands were not exhausted when she had made the payments she did for the property.

We are asked by the complainants, in view of the fact that Mrs. Peck had never had any written memorandum with her husband showing the condition of their financial relations, or the state of the account between them, or any settlement by which others might know the amount of his indebtedness to her, to say that this testimony may with great propriety be disregarded; and that especially should this be done when the equitable rights of the husband's creditors require the last cent of his property.

We do not, however, take this view of the case before us. We cannot shut our eyes to the fact that the dealings between this husband and wife were not unlike those in most other

cases where the proper feelings and mutual confidence exist between them, as we have every reason to believe they did; and in such cases we recognize no equitable rights in any creditor, superior to those of the wife, to have her property lent to her husband, while living in such confidential relations, when she calls for it, or security therefor when she demands it, and we know of no reason why the acts performed for her by her best and most confidential friend should be looked upon with suspicion while he is doing her business relating to her sole property. In this case, however, no embarrassment is encountered in that regard, as her testimony is fortified by the facts stated, and which, save by unnatural and unfounded inference, are wholly uncontradicted.

When Mrs. Peck received these deeds, the record shows that the husband had been engaged in hardware business at Maple Rapids, 12 years, and had accumulated property of his own,—some considerable more than sufficient to satisfy his debts. If this were so, it would have been quite impertinent for his other creditors to attempt an investigation of his wife's affairs. And it is equally so now if she has done no more than use her own, and has not held out inducements to others to trade with her husband upon false and delusive pretenses.

This it is charged she has done, and now seeks to avoid the responsibility of her action. We have searched the record in vain to find any evidence of this fact. It does not appear that she was ever pecuniarily interested in the business which her husband carried on, any more than any other of his creditors, except as his wife. The husband, while carrying on that business, did not nor could not represent her in anything that he did or said. Neither could he bind her by representing that he was the owner of all her property, and that he would procure the legal title from her, and have it placed in his name, so long as such statements were unknown and

unauthorized by her; and this is the most that is claimed for complainants.

Mr. Peck did not fail in business until 1884, and the record fails to show that then even it was in consequence of his wife's withdrawing her money in 1878, six years before; for much of her property which she used went into their homestead upon the farms she purchased. It does not appear that Mrs. Peck ever knew, until 1884, that her husband was in straightened circumstances, or was owing any one except herself and his brother, unless she could have acquired such knowledge in keeping his books; but it does not appear that they showed any such thing.

If there was any fraud in the acts of Mrs. Peck charged, it was committed eight or nine years before it was complained of by the complainants; and these acts charged against her, the testimony tends to show, were known all this time to the complainants. We think, if the conclusion complainants have reached in the matter is correct, it should have led them to take action earlier, if at all.

We see nothing in the circumstances of Mr. and Mrs. Peck, disclosed in the record, requiring Mrs. Peck to have made more public than she did her financial transactions with her husband, or the extent of her property, or in what it consisted. There is no doctrine of estoppel against her that can be applied to the facts of this case.

There is no view that we have been able to take of the facts which will sustain the complainants' bill, and the decree below must therefore be affirmed, with costs.

CHAMPLIN, MORSE, and LONG, JJ., concurred.